## BOWEN v. HACKNEY.

(Filed October 11, 1904).

WILLS—*Legacies and Devises.*

> Under a devise providing that at the expiration of the estate of a life tenant the property given to the life tenant shall be equally divided between the children of the testator, the representatives of such children as may have died to stand in the place of their ancestors, the husband of one of the children who died without issue and before the life tenant does not take under the will, though he be the sole devisee of the wife.

ACTION by W. D. Bowen against George Hackney and others, heard by *Judge W. B. Council,* at May Term, 1904, of the Superior Court of WILSON County.

This is a special proceeding for the partition of land, which was brought before the Clerk and by him transferred under the statute to the Superior Court for the trial of issues joined between the parties, a jury trial having been waived. The Court held that the plaintiff is not a tenant in common with the defendants and a judgment was entered accordingly, to which the plaintiff excepted and appealed.

*Small & McLean* and *S. C. Bragaw,* for the plaintiff.

*F. A. Woodard, Connor & Connor* and *J. F. Bruton,* for the defendants.

WALKER, J.   It appears from the case that Willis N. Hackney, who died in 1887, left a will, in which he devised a lot containing about one-half acre in the town of Wilson and certain personal property to his wife for life.   He then devised and bequeathed to his children land and personal property.   These devises and bequests were made in the first six items of the will, and the seventh item is as follows: "I now declare that, with the advancements already made and specially given in this will, in my judgment, equality is made to all my children, so that at the expiration of the life estate of my wife, that which is given to her for life shall be equally divided between all my children, share and share alike, the representatives of such as may have died to stand in the place of their ancestors."   Plaintiff married Orpah, a daughter of the testator, who died in July, 1899, without issue, leaving a will in which she devised and bequeathed all her property to the plaintiff.   The widow of Willis N. Hackney died in December, 1901.   Plaintiff claims an interest in the one-half acre lot as tenant in common with the defendants by virtue of the seventh item of the will of Willis N. Hackney and the will of his wife.   The Judge ruled that he was not so entitled, and this ruling we are called upon to review.

The decision of the case turns upon the proper construction of the seventh item of the will.   If the remainder after the life estate of Mrs. Hackney was vested absolutely by the seventh clause in Orpah (plaintiff's wife) at the death of the testator, and the direction as to the division of the property at her death or, to use the words of the will, "at the expiration of her life estate," referred not to the time of the vesting of the estate in interest, or of the vesting of a right to a

future estate of freehold, but merely to the time of enjoyment or the vesting of the estate in possession, it will follow that the plaintiff's contention is right and that he acquired that vested interest of his wife under her will; but if the provision of the seventh item does refer to the time of the vesting of the estate in interest or, in other words, to the accrual of the right of property as distinguished from the right of enjoyment, his wife acquired an estate contingent upon her surviving the life tenant and, as she died before the latter, her interest never vested, plaintiff took nothing under her will and his suit must fail. We are of the opinion that the latter view is the correct one.

In the construction of a will the main purpose is to ascertain and effectuate the intention of the testator, so that his property may be received and enjoyed by those who were the objects of his bounty, and his intent will always be carried out when to do so will not contravene some well-settled rule of law, for example, a rule by which a certain fixed and definite meaning is given to the language employed by him.

The case before us does not present any serious difficulty in the way of ascertaining what the testator meant, when we read the will as a whole and interpret it accordingly, or even when we isolate the seventh item and construe it by itself. The testator had in former parts of his will devised the lot in question and certain personal property to his wife for life, and devised and bequeathed other property to his children in a manner which in his opinion gave each of them an equal share of his estate. Having thus produced equality in this distribution among them, as he declared, he then directs in the seventh item of his will that, at the expiration of the life estate of his wife, that which was given to her for life should be equally divided among all his children, share and share alike, the representatives of such as may have died to stand in the place of their ancestors.

There are no words of devise in this item, except by inference or implication from the direction that the property, at the death of his wife, should be equally divided and, as to the period of division, and consequently of devise, the will uses terms of strict condition, namely, "at the expiration of the life estate." The general rule undoubtedly is that, if there is in terms a devise, and the time of enjoyment merely is postponed, the interest is a vested one, but if the time be annexed to the substance of the gift or devise, as a condition precedent, it is contingent and transmissible. 3 Wooddeson, 512. This rule was applied in the case of *Anderson v. Felton,* 36 N. C., 55, to a gift which was to take effect at the time the testator's daughter "arrived to the age of fifteen years," but there was no preceding life estate as there is in this case, and, in *Rives v. Frizzle,* 43 N. C., 237, this was said to take the case out of the rule as stated in *Anderson v. Felton.* But there are words in the seventh item of the will which distinguish this case from either of those last mentioned and bring our case within either one or the other of the principles stated in *Starnes v. Hill,* 112 N. C., at p. 10, 22 L. R. A., 598, and *Whitesides v. Cooper,* 115 N. C., at p. 574, in the passage quoted from Gray on Perpetuities, 108, which is as follows: "The true test in limitations of this character is that, if the conditional element is incorporated into the description of the gift to the remainderman (as it is in the case under consideration), then the remainder is contingent, but if after the words giving a vested interest a clause is added divesting it, the remainder is vested. Thus, on a devise to A for life, remainder to his children, but if any child die in the life-time of A his share to go to those who survive, the share of each child is said to be vested, subject to be divested by its death. But on a devise (as in the present case) to A for life, remainder to such of his children as survive him, the remainder is contingent." *Clark v.*

*Cox,* 115 N. C., 93 ; 2 Underhill on Wills, sec. 867, and also pages 1309 and 1310.   It can make no difference in this case whether the remainder to each child was contingent, or vested but subject to be divested by its death before that of the life tenant.   In either view the plaintiff must fail, and it is immaterial therefore which alternative of the proposition we adopt as applicable to this case.   If the remainder to the children of the testator at the death of their mother is not contingent, it can only be vested, subject to be divested as to any child who predeceased the mother, for it surely was intended that the representatives of any deceased child should take not by descent but by purchase, that is, nothing from the parent, but all directly from the devisor.   This appears plainly we think from the language of the item.   2 Underhill on Wills, sec. 867.   In the first place, the division is not to be made until the death of the life tenant, and that is the time fixed by the terms of the will when it shall be definitely and finally determined who shall take.   *Fleetwood v. Fleetwood,* 17 N. C., 223 ; *Simms v. Garrot,* 21 N. C., 397 ; *Irvin v. Clark,* 98 N. C., 437.   The testator evidently had in mind the possibility that one or more of his children might die during the life of his wife, and provided for that contingency by giving the share which a deceased child would have taken if it had outlived the mother, to his or her representatives.   It is manifest that the testator intended that the gift in the seventh item should take effect finally and absolutely according to the state of his family as it existed at the death of his wife, and the item should be construed as if it read: "So that at the expiration of the life estate of my wife, that which is given to her for life shall be equally divided between all my children, then living, and the representatives of such as may have died, the latter to stand in the place of their ancestors."   By this construction of the will a condition precedent would be annexed to the gift which

would prevent its vesting in any child unless he or she should survive the life tenant. The case in this aspect would fall within the principle stated in *Watson v. Watson,* 56 N. C., 400.; *Williams v. Hassel,* 74 N. C., 434; *Miller Ex parte,* 90 N. C., 625; *Young v. Young,* 97 N. C., 132; *Starnes v. Hill,* 112 N. C., 1, 22 L. R. A., 598; *Clark v. Cox,* 115 N. C., 93, and *Whitesides v. Cooper,* 115 N. C., 570.

The children took contingent remainders, the contingency being that they should survive their mother, and failing in this as to any one or more of them the remainder vested in his or their representatives by purchase, as said by *Shepherd, C. J.,* in *Whitesides v. Cooper, supra.* This would be the limitation of concurrent fees to take effect alternatively or as substitutes one for the other, which Fearne (3 Am. Ed.), 373, explains as follows: "However, we are to remember that although a fee cannot, in conveyances at common law, be limited on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives one for the other, and not to interfere, but so that one only takes effect, and every subsequent limitation be a disposition constituted in the room of the former if the former should fail in effect." *Loddington v. Kyme,* 1 Ld. Raym., 203. Cruise (Vol. I, title 16, ch. 1, sec. 50) describes the ulterior devise to the "representatives" as a contingent fee, not contrary to but concurrent with the former limitations to the parent, according to the notion in *Plunkett v. Holmes* (Raym., 28), and the limitation as one upon a contingency, with a double aspect, the language of Fearne (p. 373) being, "this sort of alternative limitation was termed a contingency with a double aspect." *Shepherd, C. J.,* explains this principle with his usual clearness in *Watson v. Smith,* 110 N. C., 6, 28 Am. St. Rep., 665, and in *Whitesides v. Cooper, supra.* If a child survived the mother the remainder was to vest, but if a child died before the mother the remainder then vested in

the representatives of that child. "But at this day," says Fearne, p. 373: "Such limitations may be good in a will or by way of use upon a contingency that may happen within a reasonable period; though this not by way of direct remainder, but by way of executory devise, or springing or shifting executory use." The nature of the limitation is immaterial in this case.

That there is a condition precedent annexed to the gift to the children, we find decided in *Hunt v. Hall,* 37 Me., 363, a case substantially like ours. The limitation there was "after the decease of my dear wife my will is that my executor, hereinafter named, cause an equal division to be made among all my children and the heirs of such as may then be deceased." With reference to this devise the Court said: "The persons who are to take are not those who are living at the death of the testator. The division is not then to take place. This is to be done at a subsequent and uncertain period. If the estate were to be construed as vesting at the death of the testator an heir might convey by deed his share of the estate, and if he should decease before the termination of the life estate, leaving heirs, his conveyance would defeat the estate of such heirs. This would be against the express provisions of the will, which provide that the estate should be divided 'among his children and the heirs of such as may then be deceased.' By the terms of the will the estate is not to vest till after the death of the widow and then a division is to ensue. Till then there is a contingency as to the persons who may take the estate." The only distinction between the two cases, though they are not anywise different, is the substitution of the words "legal representatives" for the word "heirs," and it must be conceded that, with reference to the lot in controversy, the words "legal representatives" clearly refer to the heirs or the persons who would have rep-

136——13

resented their ancestor had she outlived the life tenant and the remainder had vested in interest and then by her death the descent had been cast. The words were used to designate the persons who would thus have taken in the other event, but in the event as it actually occurred shall take, not by descent but by purchase, the intention being to create a new stock of inheritance.

If we assume though that the remainder vested in each child upon a condition subsequent, namely, that he or .she should survive their mother, which would divest the interest as to any child if it died before its mother, then Mrs. Bowen's will passed nothing to her husband (the plaintiff), as the very instant it took effect under the statute she lost her interest in the property, her mother being alive at that time. *Wilson v. Bryan,* 90 Ky., 482.

The fact that Orpah (Hackney) Bowen died without issue cannot change the construction of the will, which must be determined from its language as of the time when it took effect and not from subsequent events, for the evident meaning of the testator was that his property should go to his "children equally, share and share alike," the representatives of any one who had died before the mother to stand in the place of such dead ancestor, and if there were no such representatives, then the leading and paramount intention of the testator should prevail and the division should still be made equally among his children, that *is*, the survivors, who would also be the heirs or representatives of the deceased daughter.

It was argued that the word "representatives" includes not only heirs but a devisee, or one who takes from another by purchase. We do not think that such a comprehensive meaning can be given to the word representatives under the terms of this will. It means the persons who are appointed

not by the devisor in her will, but by the law, to represent her, and upon whom the law would have cast the inheritance, it having been used in this sense as *designatio personarum.* Besides, they must be the representatives of their "ancestor," which is defined as follows: "One who has preceded another in a direct line of descent; a lineal ascendant; a former possessor; the person last seized; a deceased person from whom another had inherited land." Black's Dict., p. 69; 2 B. Comm., 201. Kent (Comm., 4 Vol., 404) says: "Ancestral estates are such as are transmitted by descent, and not by purchase." The plaintiff, as devisee of his wife, does not come within any of these definitions.

We have examined the cases cited by the appellants' counsel in their brief and argument, and find that the language of the several wills which was construed in them as giving vested remainders was entirely different from that of the will in this case. We must observe well-settled rules of construction in interpreting a will, but such rules must be applied with strict reference to the peculiar wording of the will so as not to defeat the expressed intention of the testator. We are speaking of rules of construction and not rules of property.

The Court correctly adjudged that the plaintiff is not a tenant in common with defendants, and there was no error therefore in dismissing the action.

Affirmed.

CONNOR, J., did not sit on the hearing of this case.